WESTERN UNION TELEGRAPH COMPANY v. WILLIAM BELL.

Decided January 7, 1908.

**1.—Action—Husband and Wife.**

Under the laws of this State a husband may bring an action in his own name against a telegraph company for the negligent failure to deliver a message addressed to his wife alone, and this, although at the time of making the contract the company had no notice that the plaintiff was the husband of the addressee and her agent for the receipt of the telegram addressed to her.

**2.—Telegraph Company—Pleading.**

A telegram was sent to a third party requesting him to notify plaintiff's wife that her brother was dead; in an action for damages for failure to deliver said telegram it was necessary to allege that if the telegram had been promptly delivered said party could and would have notified the wife in time for her to have availed herself of the information.

**3.—Same—Liability—Insufficient Evidence.**

Evidence considered, and held insufficient to show that the plaintiff was damaged by the failure of a telegraph company to deliver a message promptly.

**4.—Same—Notice—Evidence.**

In a suit against a telegraph company for failure to deliver a telegram in due time, plaintiff having alleged that by the exercise of ordinary care the addressee could have been found in a short time, testimony that at the time the message was filed with the defendant its agent was informed how to locate the addressee, was material and competent.

Appeal from the District Court of Galveston County.    Tried below before Hon. Lewis Fisher.

*Hume, Robinson & Hume* and *N. G. Kittrell, Jr.,* for appellant.

*James B. & Charles J. Stubbs,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—Appellee, William Bell, sued appellant, Western Union Telegraph Company, for damages for negligent failure to transmit and make timely delivery of two telegrams. The case was submitted to the court without a jury and resulted in a judgment in favor of appellee for $1000, from which judgment appellant duly perfected its appeal.

In his petition plaintiff, in substance, alleged that on September 27, 1903, at about 3 o'clock p. m., H. W. Buttleman delivered to appellant at Galveston, a telegram addressed to Mrs. William Bell, whose Christian name was Mary or Mollie, for transmission and delivery to her at Port Arthur, Texas, reading as follows:    "Come at once. Your brother Charley is dead;" that defendant's agent informed the sender at the time the message was filed at Galveston that the Port Arthur office would not open until 4 o'clock p. m., as it was Sunday, but that thereafter the message could and would be received and delivered, to which the sender replied that it would be in time if it reached the addressee by 6 o'clock p. m. of that date, as that would enable her to leave for Galveston that night, or if received at a later hour that night she could leave early the next morning

and arrive at Galveston before her brother's burial, which was to take place the following afternoon; that in his anxiety to insure the attendance of Mrs. Bell, the sender not having heard from her, and not being able to learn from defendant's office in Galveston, after repeated inquiries, whether the message had been delivered, the same afternoon dispatched over defendant's wires from Galveston to Port Arthur the following message addressed to Mike Maurer, who lived at Port Arthur for more than a year, and was well known:

"Tell Mollie Bell to come at once. Her brother Charley is dead."

That the message to his wife was not delivered to plaintiff or his wife until the following morning, September 28, at about 11:20 a. m., and the one addressed to Maurer was not delivered to him until about 10:50 o'clock of that morning, although he and Mrs. Bell lived only a short distance from defendant's office and were well known at Port Arthur, especially Maurer, who knew plaintiff and his wife well, and also where they lived; and that in the exercise of ordinary and reasonable care defendant could and should have delivered one or both of said messages on the day it was sent; that Port Arthur was a small town, and ordinary care in making inquiries would have resulted in locating, in a very few minutes, either of the addressees in the telegrams and the delivery thereof; that the failure so to do was a breach of the duty and contract on the part of said defendant; that defendant's said negligent failure caused plaintiff's wife to suffer much sorrow and distress by reason of not being able to be present when and before her brother was buried, which she could and would have done if either of said messages had been received within a reasonable time after they were filed with defendant, etc.

Defendant excepted to that portion of plaintiff's petition which alleged the failure of defendant to deliver the telegram first filed, on the ground that said allegations stated no cause of action; that the damages prayed for were contingent, speculative, and not within contemplation of the parties, and bases its first assignment of error on the failure of the court to sustain the exception. In support of the assignment appellant presents the proposition that in the absence of allegation of notice to defendant's agent that the plaintiff William Bell was the husband of Mollie Bell and her agent for the receipt of telegrams addressed to her, no cause of action for damages for mental anguish of Mrs. Bell was stated. To this contention we can not agree. The contract for transmission and delivery of the telegram was made by appellant for the benefit of Mrs. Bell. The telegram itself apprised appellant that a negligent failure to make timely delivery would result in damages to her. It was for the recovery of the damages thus caused that the suit was instituted; and while it is true that Mr. Bell, and not Mrs. Bell, was the plaintiff and sought the recovery in his own name, this was because of the policy of our laws, which gives to the husband the right in such a case to sue in his own name for damages sustained by the wife. We are of the opinion that it was not necessary to allege in the petition that appellant, at the time of the filing of the

telegram, had notice that appellee was the husband of Mrs. Bell and her agent for the receipt of telegrams addressed to her.

By his second assignment of error appellant complains of the refusal of the court to sustain its second special exception to plaintiff's petition, which in effect was that the allegations as to the sending of the telegram to Mike Maurer state no cause of action for damages for mental anguish, etc. In the absence of an allegation that Maurer could and would have received the telegram and communicated its contents to plaintiff's wife in time to avail herself of the information it contained, the petition was defective and the exception should have been sustained; but in the view we take the error in refusing to sustain it is harmless. The office of appellant at Port Arthur, as shown by the evidence, opened at 4 o'clock p. m. and closed at 6 p. m. on Sunday; the telegram to Maurer was not filed in appellant's Galveston office until 6:30 p. m., which was a half hour after the Port Arthur office was closed. Manifestly the telegram could not have been received at Port Arthur on the day it was filed in Galveston and no cause of action could arise on the failure of appellant to transmit the telegram on that day. The evidence further shows that the appellant's Port Arthur office did not open until 8 o'clock the next morning, hence, had the message been dispatched in time to reach there at the opening hour it could not have been delivered to appellee's wife in time for her, acting upon the information it contained, to have reached Galveston on that date. This being true, the failure to transmit and deliver to Maurer the telegram sent to him could not be the basis of a cause of action; and as the pleading and proof showed a good cause of action for the negligent failure to deliver, within a-reasonable time, the telegram sent to Mrs. Bell, it will not be presumed that the trial court in rendering a judgment took into consideration the pleading and proof in relation to the Maurer telegram.

On the trial the witness Buttleman testified on behalf of appellee that at the time he filed the message directed to Mrs. Bell he told appellant's agent at Galveston that Mrs. Bell lived a block from the postoffice; that Mr. Bell worked at the refinery, and that through Mr. Charleston at the refinery he could locate Mr. Bell, that the latter was the head man there. This testimony was objected to on the ground that it was immaterial and irrelevant to the case pleaded by appellee, and appellant's third assignment is based upon the overruling of this objection. The assignment can not be sustained. Appellee alleged that "ordinary care in making inquiries would have resulted in locating in a very few minutes either of the addressees in the telegrams and the delivery thereof;" further, that Mrs. Bell could and would have been present when and before her brother was buried "if either of said messages had been received within a reasonable time after they were filed with defendant;" and, further, that "Mr. Maurer and Mr. and Mrs. Bell lived only a short distance from defendant's office and were well known at Port Arthur, especially Mr. Maurer, who knew plaintiff and his wife well and also where they lived, and in the exercise of ordinary and reasonable care defendant should and could have delivered one or both of said

messages on the day which it was sent." The evidence objected to tended to support the allegations of the petition above quoted and was admissible for that purpose. Again, the appellant to excuse its failure in delivering the telegram introduced testimony showing great activity on the part of its Port Arthur agent to locate Mrs. Bell after the receipt at Port Arthur of the telegram addressed to her. Appellee, in the anticipation of the offering of such evidence by appellant, had the right to introduce the evidence in question to show that appellant, having been informed at Galveston as to how Mrs. Bell could be found, and having negligently failed to use the information it had to locate and make prompt delivery of the telegram to her, had not used ordinary care and diligence in making the delivery. The assignments point out no reversible errors and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.